Good morning, may it please the court. My name is Richard Minatoya. I'm a Deputy Prosecuting Attorney for the County of Maui. Also present is First Deputy Prosecuting Attorney Peter Hanano, with the duly appointed Special Deputy Attorneys General to represent the appellant and process appellee in this matter. In this case, this involves what we deem as the District Court's error in its review on habeas corpus application on the issue of the trial court's decision not to allow testimony about a third party's alleged confession to having committed the murder that happened in this case. With respect to that analysis done by the District Court, looking at whether it was contrary to clearly established federal law as set forth by the U.S. Supreme Court. Well, the applicable case is Chambers v. Mississippi, correct? That's correct. Okay, so the decision that has to be made is whether or not the Hawaii Supreme Court unreasonably applied Chambers. That's correct. Before I go any further, I would like to reserve five minutes for rebuttal. To answer that question, that's correct. There's a two-part thing. First is whether it was contrary to, and it's not because the Hawaii Supreme Court did consider Chambers. The second part is whether or not the Hawaii Supreme Court's decision was an unreasonable application of Chambers. It seems looking at the District Court's order, the District Court kind of homogenized the two and put them together, briefly just mentioning unreasonable application and then saying everything was contrary to. Okay, but now it's here for us to look at. Why is this case really any different than Chambers at all? Well, looking at the facts of Chambers, and that's where we contend the question of whether or not it was materially indistinguishable. And it's not. It is materially distinguishable. Looking at the facts, particularly looking at the availability of the third party who made the alleged confession. And in Chambers, it was an individual named McDonald. And in our brief, in our opening brief, we looked at the analysis that was done by the U.S. Supreme Court. And in particular, the Supreme Court in Note 21 looked at an argument raised by the government in which a third party makes a confession to some other individuals and then disappears. The first party gets charged and the people that were the receiving party of the alleged confession come in and testify saying somebody else did it. The first party gets acquitted. Second party comes in and says he never made those statements. And then, you know, nobody's committed perjury, but, you know, justice is not being served. Let me be more specific in my questions. Chambers wasn't just generically applicable. Chambers involved someone else saying to four people, I believe, in that case, I committed the murder. And in this case, I think the person told two people or something like that. So two or three, I'm forgetting the numbers now. And in each case, there are some indicators that the statement could be reliable. Maybe, maybe not. But what the Supreme Court says, that's for the jury and you're entitled to present that as a defense. Why is this case materially different? We look at the type of evidence that was available in Chambers. First of all, McDonald gave a sworn statement. That didn't happen in this case. So do you think that that's enough all by itself to say that confessions can't, that a person can be denied the opportunity to bring that forward if it's not a sworn confession? But that's not the only factual, the only distinguishing factor in Chambers. Chambers also dealt with the fact that the person who made the alleged confession was available. In this case, the person was not available. Further, only one of the police officers said he saw Chambers shoot the officers. And another testified that he saw McDonald with a pistol in his hand. In this case, the eyewitnesses at the location identified the petitioner. Not anybody else. There's nothing to tie this third party, Mr. Burkhart, to the location. You know, there's a subsequent, in Chambers, a subsequent purchase of a .22 caliber pistol. I thought there was some evidence that Burkhart was in the area. There was only a statement made that said that he was supposed to be there. But then we had, the government had testimony, potential testimony that would establish this. That placed him somewhere else. That's correct. But it wasn't definitive that he was somewhere else. I thought there was some proffered testimony that he was in the neighborhood. The only testimony that was brought up was of a neighbor who said that he was supposed to be at their house, and he never showed up. But nothing to show that he was there. There was the proffered testimony of the state that said that he was at a relative's house far away in upcountry Maui. Not anywhere near Kihei where the murder occurred. So there are factually distinguishing factors between Chambers and this case, which, you know, in looking into Chambers, the U.S. Supreme Court also says that this is a case-specific error correction matter and not something that can be or even should be applied across the board. Finally, on this issue, looking at the question of whether or not there was actual prejudice, you know, the petitioner fails to meet his burden. The conjecture is that he was not able to counter the state's claim that Mr. Burkhardt had an alibi. There was no alibi testimony. The detective was asked whether he tried to verify the alibi. The detective said yes. The questioning ended there. There was no other testimony about whether or not there was an alibi. Further, the petitioner's burden of proof, not the government's burden of proof. And looking at what the district court ordered, the district court order stated that it could not determine, it cannot say with fair assurance that the exclusions of the confessions did not have a substantial effect. So basically. But I'm not sure I follow that. The prejudice, as I understand the defendant to be arguing, is by not being able to create a plausible argument through Burkhardt's alleged confession to the witnesses to whom he supposedly made inculpatory statements, that the jury was deprived of evidence to say that someone else did it. The alibi aspect would be, as I understand it, if the evidence had come in, and then the state was prepared to come in and say, Burkhardt was on the other side of the island, no way, and impeach the direct testimony put on by the defendant's case. Isn't that correct? That's correct. And so there was no alibi testimony for them to rebut. Well, that may be. But he still had the purpose of Burkhardt's confession was to show that the Burkhardt did it, not Christian. And then the question would be, well, would the jury buy that, given all of its weaknesses, and would the state then blow it out of the water with testimony about an alibi? That I understand. But then that's the issue, that it's their burden to prove, and the court said it could not say with fair assurance, which means. It's their burden to prove what? It's their burden to show that there was actual prejudice. Well, how can they do it? I mean, the prejudice is self-evident. If I've got somebody who says they did it, okay, and so what they're supposed to be able to say, not only do I have evidence that Burkhardt confessed to doing it, but I know the state's going to put on a witness in rebuttal to that who will say Burkhardt was on the other side of the island, and in rebuttal to that, I'm going to be able to show that Burkhardt was actually not on the other side of the island, but he was here. Therefore, I will have a coherent case that's not subject to definitive impeachment. I see what you're getting to. And in that case, on that matter, as part of our argument against, you know, on why Chambers does not apply, or there's a distinction factor in Chambers, is that in Chambers there was cooperation. In this case, the only cooperation that they can claim and that the district court looked to is that these statements cooperate with each other, these statements of co-drug users and co-convicts, and the trial court looked at the cooperation and the credibility of these witnesses. Well, that goes back to distinguishing Chambers, but I don't get your prejudice point. I mean, it seems to me that if he could have put in evidence that there was somebody else who had told friends that he was the one who did it, that that's the very kind of evidence you would want to have in a somebody-else-did-it case. That's correct, but then the district court said it could not say with fair assurance, which means they never met their burden of proof. They did not establish actual prejudice. It's still up in the air as far as it was in the eyes of the district court if it couldn't say it with fair assurance. And in that case, they never met their burden of proof, and that argument fails. With regard to the issues raised by the appellee on their cross-appeal, it's clear that both issues were uncertified. This court does not have to consider those issues because of the lack of certificate of appealability, and I will address our remaining arguments on those issues on my rebuttal. Thank you. Thank you. Thank you. May it please the court, I'm Mark Barrett. I represent Tarrant Christian, the petitioner, in this case the appellee of cross-appellate. In Tarrant Christian's case, your honors, the jury did not hear Tarrant Christian's case. To say that what occurred in his case resulted in a fair trial would be to say that only the prosecution has a right to present its evidence and not the defense. The distinctions that Mr. Minatoya attempts to make between this case and Chambers v. Mississippi are distinctions which are without a difference. Well, what really matters to us is what the Hawaii Supreme Court said, because we have to find that its analysis was too far afield to stand, and we have to give quite a bit of deference to what the court said. So what's your response to the Hawaii Supreme Court's analysis as opposed to what opposing counsel has said today? My response, your honor, is that, first of all, the court clearly identified the correct legal principle that unreasonably applied that principle. And in support of that, there's a previous Ninth Circuit case called Chia v. Canberra, which finds an unreasonable application of controlling Supreme Court law, including Chambers, in a very similar circumstance. And in that case, by the way, just as in Karen Christian's case, the witness whose confession was not admitted was a person who took the Fifth Amendment and was therefore unavailable. And in further support of the idea that the unavailability of Mr. Burkhart does not create a distinction between this case and Chambers are the hearsay statutes, which, in fact, at this juncture in our jurisprudence, consider unavailability a greater reason for admission than a reason for not admitting. In addition, your honors, the case here is actually far more egregious than in Chambers, because in Chambers, at least the jury knew there was one confession of Mr. McDonald. There was a written confession of Mr. McDonald that was admitted into evidence. He repudiated that confession, was not permitted to be cross-examined about his repudiation, and then the court denied the admission of oral statements made to three of Mr. McDonald's friends that Mr. McDonald had committed the homicide. So whereas in Chambers, at least the jury knew there was some confession, here in Mr. Christian's case, there was no ability of the jury at all to consider Mr. Christian's defense. Counsel, here's what's bothering me. The Supreme Court has been fairly critical of the Ninth Circuit in pushing the envelope, I'm going to be colloquial in this, but I take the post-Chambers, the Supreme Court has admonished the circuit and other circuits to be careful when reviewing decisions of state courts who are applying Supreme Court cases. And, yes, we have cases that you may be relying on, like Chaya, but my concern is that in Chambers, if you read Chambers, the Supreme Court emphasizes several things, including the fact that it was McDonald who himself had proffered, at one point, even though he retried, McDonald had proffered the confession. He had made it, it was there, and McDonald was there to be cross-examined. So it was, and so then the Supreme Court says, we establish no new principles of constitutional law, nor does our holding signal any diminution of the respect traditionally accorded to states in establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case, the rulings of the trial court deprive Chambers of a fair trial. So given that, embedded in the body of the principle, in fact, the only Supreme Court case, the Hawaii court has to go on and we have to go on, I'm having a little trouble saying that where you then have a situation where now there's not any evidence other than through third-party testimony that Burkhardt actually made a confession. McDonald made a confession. It was an admission against interest, it was admission, and he was available to be cross-examined if he wanted to walk away from it. He put Burkhardt in the McDonald position. Burkhardt's never out of his own mouth. We don't have a Burkhardt statement that's of record. Burkhardt's not around to be cross-examined. Why aren't those material distinctions if we look at Chambers, which says under the facts and circumstances of that case, and the facts and circumstances being including principally the two I've just identified, why is the Hawaii Supreme Court unreasonable in its application? Well, Your Honor, they are distinctions, but the answer is they are not material distinctions. And the reason they're not material is because the core principle is whether the defendant is able to present a valid defense. The core principle is not whether the defendant is justified under the nuances of evidentiary laws. Then why didn't the Supreme Court just say that? Why didn't they just say? The basic principle is that they say, few rights are more fundamental than that of an accused to present witnesses in his own defense. He was not allowed to end a story. But then they go on to outline why in this case it was applicable here, and then they have this limitation, as I read it, under the facts and circumstances of this case there was an error. Because they clearly are confronting in that case the issue of excluding evidence of hearsay, of dealing with the whole issue of whether it's an innocent corroboration and the like. So that's my concern, is that to just ignore the limiting language of Chambers and the specific facts of this case. I take your point about the principle, but there are Supreme Court cases, including applications of Strickland, where the Supreme Court has said where there is a general principle, then there's a higher standard for us before we can find the state court application to be unreasonable. As to general principles, Your Honor, first of all, in Panetti v. Quarterman, the Supreme Court said what matters is the principle, not the exact facts. And that has been applied, although not stated as expressively, in one of the appellant's cases, Williams v. Taylor, in which the Supreme Court found an unreasonable application of the law regarding mitigation evidence on a very specific set of mitigation facts that, as far as could be told by the Supreme Court opinion, had never come up in any previous Supreme Court opinion. It involved details of how the person grew up in squalor and filth as a child and never had a good home, that sort of thing. Those are particular facts that were applied to the broader principle that you have to have a right to present mitigation evidence, and you have to have a right to have your attorney do that if you're in that position. Well, counsel, let me ask you this. Would you agree that there is some point on a continuum where proffered evidence of another person's alleged confession is so unreliable that a court permissibly could distinguish chambers and say, we don't just have to allow anything goes, and this is so unreliable that we don't have to allow it in? Would you agree that there's some place on that continuum that's like that? Yes, absolutely. If the idea that there was confession were completely fanciful, I don't believe a court would be required to admit that that's not the case we have here. Now, this seems to me to be right on the dividing line. I find this case extremely difficult because I agree that there is a continuum, and in some place you have something relatively strong, and chambers is at that end where you have the person there, and they've actually signed something and said, I did it, and then you have the completely outlandish claim over here. We're somewhere in the middle because these statements are not, to me, as compelling as the statements in chambers. Your Honor, Mr. Mentoy's statement regarding the state of the evidence regarding Mr. Burkhardt is either incomplete or misleading. He was, in fact, scheduled to be at the Santana residence, and Tessia Santana was one of the persons who ended up at the crime scene, of course, on that evening. Ms. Santana's mother, then, according to the evidence proffered by the defense, was getting threatening calls that if Tessia were to speak up, she might be in danger. In addition to that, Mr. Burkhardt was the original suspect in the case. According to much of the evidence, he matched the description in the case. But the eyewitnesses did not identify him in the photo line-up. Rather, they identified the defendant here. None of the confessions were sworn. I mean, these are things that the Hawaii Supreme Court relied on, and there was conflicting evidence about whether Burkhardt was even in the same town. As I think Mr. Minotoi has said, that I want to make clear, if not, there was no evidence that he had an alibi. They made an offer of proof. In the evidentiary hearing phase, although this did not come in in time to be admitted, it's still in the record as a proffer, if your honors see fit to consider it, one of those alibi witnesses gave a statement basically saying that she couldn't have provided an alibi at all. Furthermore, both of those people were relatives of Burkhardt's. So to say that there's no prejudice because he had a clear alibi is absolutely incorrect. Well, it's not really a matter of prejudice. What I'm trying to get at is whether the issues on which the Hawaii Supreme Court relied are permissible because it's that court that we're looking at to see whether it's reasonable, not your opposing counsel. We're looking at what they said. And what they said was that the testimony here is significantly less reliable than the testimony in chambers for a variety of reasons. And I believe because of the many corroborating factors in this case, that this court should disagree with that analysis of the Hawaii Supreme Court. And further, that because of the emphasis, in fact, the Supreme Court has recently placed on the need to allow a person to present his defense, that making those fine distinctions on whether the facts of this defense are better or worse than that defense is not something this court needs to make. That's something that the jury should have been allowed to make. And to make that point very strongly, the court in Holmes v. South Carolina acknowledged that there was extreme and strong evidence against the defendant in that case. And yet there were confessions of another person that were not admitted just because of that strong evidence. And the Supreme Court said that is wrong. The accused had a right to present his defense that, I'll look for the name, that Jimmy McCaw White, who had confessed, was the person that committed the crime. And that was in spite of the fact that there was the defendant's fingerprint evidence on the attack victim's house that fibers from his clothes were on her nightgown and fibers from her nightgown were on his underwear. In spite of the fact that there was an eyewitness that saw Mr. Holmes at the location that the attack occurred. In spite of the fact that there was DNA evidence on the underwear of the victim, DNA evidence that 99% matched the accused, the fact that Jimmy McCaw White's confessions were not admitted still deprived Mr. Holmes of the right to present a defense. And in this case, just as strongly, Mr. Christian was denied the right to have the jury consider his side. Only the prosecution side of the evidence was considered. In this case, Your Honors, and under fundamental principles of American jurisprudence, that is wrong. Thank you, Counselor. You have exceeded your time. Okay. I appreciate your argument. I believe you have a few minutes of rebuttal left. Thank you, Your Honor. Rather than go into the cross-appeal, I'm going to address the issues that were raised in the argument raised by the appellant. First of all, they continue to cite Chia. We pointed out that Chia, as Judge Christian knows, being on the panel for Moses v. Payne, the five-part test raised in Chia was rejected. Secondly, the courts indicated some uneasiness with regard to doubting or reviewing the Hawaii Supreme Court's analysis of Chambers, and we agree. Reasonable minds may disagree. The standard is whether or not the application was objectively unreasonable. Just because the court disagrees if the application was not objectively unreasonable, the state court's decision should stand. As far as the quality of the evidence, looking at the Hawaii Rules of Evidence, which mirrors the Federal Rules of Evidence, that's why those rules are there, to keep out unreliable evidence, and that's what the trial court did in this case. They referred to these alleged confession testimonies. There's no corroboration, and that's the main point. They also stated that we cited Williamson. Well, we cited Williamson to distinguish it as part of the Chia analysis that was overturned by Moses v. Payne. How was the defendant importuned by the fact that he confessed? Was he forced to do that? Was there anything in the record? It was just really a purely voluntary confession. Of the third party? Yeah. No, the defendant. This defendant? Yeah. There was no confession in this case. Okay. Based upon the arguments we raised here today and in our briefs, we request that this court reverse the grant of the writ of habeas corpus by the district court, or in the alternative, vacate and remand this matter for the district court to deny the petition and to order the defendant to reenter custody. Thank you very much. Thank you, counsel. The case just argued is submitted. The arguments were very helpful. We appreciate it. We do appreciate the arguments very much. And with that, the case is submitted, and we've completed our docket for today. All rise.
judges: Beezer, Graber, Fisher